## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| ROSLYN TRAVIS-STRATTON, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 17-cv-6912 |
| | ) | |
| v. | ) | Hon. Jorge L. Alonso |
| | ) | |
| RIVERSOURCE LIFE | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

After defendant Riversource Life Insurance Company ("Riversource") denied her claim for disability benefits, plaintiff Roslyn Travis-Stratton ("Travis-Stratton") filed in the Circuit Court of Cook County a complaint alleging a single count of breach of contract. Defendant removed the case here,[1] and both parties have moved for summary judgment. For the reasons set forth below, the Court grants defendant's motion for summary judgment and denies plaintiff's motion for summary judgment.

## I.    BACKGROUND

The following facts are undisputed unless otherwise noted.[2]

_____

[1] The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332(a)(1). Plaintiff is a citizen of Illinois. Defendant is a citizen of Minnesota, because it is a Minnesota corporation with a principal place of business in Minnesota. The amount in controversy is greater than $75,000.00.

[2] Local Rule 56.1 outlines the requirements for the introduction of facts parties would like considered in connection with a motion for summary judgment. The Court enforces Local Rule 56.1 strictly. Where one party supports a fact with admissible evidence and the other party fails to controvert the fact with citation to admissible evidence, the Court deems the fact admitted. *See Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 218-19 (7th Cir. 2015); *Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817-18 (7th Cir. 2004). This does not, however,

On or about June 15, 2003, plaintiff, a dentist, took out a disability income insurance policy with defendant, which, at the time, was called IDS Insurance Company. Plaintiff's policy, Policy No. 9100-07167770 (the "Policy") provides a Basic Monthly Income of $5,000.00 per month, with a Social Benefits Rider of $1,200.00 per month and a cost of living adjustment of 4%. The Policy states, among other things:

Policy Data
*   *   *

Benefit Starting Date:   181st day of total disability
*   *   *

### The Insurance Contract
*   *   *

### Definitions
*   *   *

**Benefit Starting Date**

The date shown under Policy Data. It is the date when benefits begin during a Period of Disability.
*   *   *

**Period of Disability**

A Period of Disability

1.   begins on the first day You are disabled, and
2.   ends when You are no longer disabled.
*   *   *

**Regular Occupation**

The job or occupation in which You work on a full time basis, or one from which You derive the majority of Your earned income at the time You are disabled.
*   *   *

**Total Disability**

When We use terms like 'disabled', 'totally disabled,' and 'disability,' We mean Total Disability. Total Disability means that because of Injury or Sickness, You are:

---

absolve the party putting forth the fact of the duty to support the fact with admissible evidence. *See Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880 (7th Cir. 2012).

1.      Under the regular and personal care of a licensed Physician other than yourself;

2.      In the first two years of such disability, unable to perform the material and substantial duties of Your Regular Occupation; and

3.      After two years of such disability, unable to perform the material and substantial duties of any gainful occupation for which You are reasonably fitted by education, training or experience.

*   *   *

## Benefit Provisions

**Total Disability Benefit**

If You are disabled until the Benefit Starting Date, benefits will be payable for Total Disability on and after the Benefit Starting Date.  Benefits will be paid at the Basic Monthly Income benefit rate shown under Policy Data.  Benefits will be paid only while You are Totally Disabled.

*   *   *

## Waiver of Premium

**Premium Waived After 90 Days**

After You have been disabled for 90 days, We will waive any premium that becomes due while You remain disabled before Age 65.  Your policy and its benefits will continue as though the premium had been paid.  If any premium was due and paid in the first 90 days of disability, We will refund it to You.

*   *   *

## Social Benefits Rider

*   *   *

We will pay You up to the rider benefit if:  1) Your Disability continues to this rider's Benefit Starting Date, which is shown under Policy Data; and 2) the policy benefit is payable for such Disability.

(Policy at 3, 4, 5-6, 7/Docket 59-2 at 8, 9, 10-11, 12, 18).

Plaintiff has owned and practiced dentistry at My Dentist & Associates ("My Dentist") since 1990.  Plaintiff's schedule at My Dentist is 9:00 a.m to 5:00 p.m. on Wednesdays and Fridays and 8:00 a.m. to noon on Saturdays, for a total of 20 hours per week.  At My Dentist, plaintiff, in her words:

diagnose[s] and treat[s] diseases and injuries of the mouth.  I remove dental decay, diseased teeth and neoplasms.  I restore teeth with crowns, fillings and onlays.  I replace teeth with implants, partial dentures, bridges and complete dentures.  I manipulate teeth and braces.  I remove diseased tissue during

3

periodontal surgery.  I educate patients on proper oral hygiene and dieting.  I
consult with other dentists, physicians and pharmacists.

Plaintiff spends 5% of her work time working with office equipment, 90% of her time working

with small hand tools (including hammers, saws, wrenches) and 5% of her time on general office

duties, including supervising four employees.  For this work, plaintiff takes a salary of

approximately $11,000.00 per month.

At various times during her career, plaintiff worked, in addition to her work at My

Dentist, as a part-time dentist in other practices.  For example, from about September 2011 to

about November 2015, plaintiff was paid $126,000.00 per year to work as a part-time dentist at

Family Christian.  Plaintiff left that position voluntarily in November 2015.  By December 2015,

plaintiff was employed as a part-time dentist at Dental Dreams, LLC ("Dental Dreams").

At Dental Dreams, plaintiff worked 16 hours per week, spending 95% of her time

working with small hands tools and 5% of her time working with office equipment.  At Dental

Dreams, plaintiff worked with the same dental tools and equipment (with the exception of

Electrosurge) as she used at My Dentist and performed the same types of dental procedures.

Plaintiff describes her work at Dental Dreams as follows:

I diagnose and treat diseases and injuries of the mouth.  I remove dental decay,
diseased teeth and neoplasms.  I restore teeth with crowns, fillings and onlays.  I
replace teeth with implants, partial dentures, bridges and complete dentures.  I
manipulate teeth and braces.  I remove diseased tissue during periodontal surgery.
I educate patients on proper oral hygiene and dieting.  I consult with other
dentists, physicians and pharmacists.

For her work at Dental Dreams, plaintiff was paid $2200 biweekly (i.e., $550 per day), which

was less than she was earning at My Dentist during the same time period.

In March 2016, plaintiff stopped working at Dental Dreams, because her doctor, Augusto

Chavez ("Dr. Chavez"), limited her to working 20 hours per week on account of numbness in her

arms.  In September 2016, plaintiff made a claim for benefits under the Policy, asserting that she

had become disabled in March 2016.  When plaintiff applied for benefits, Dr. Chavez again

reported that plaintiff should work "no more than 20 hrs/week."  Dr. Chavez did not restrict

plaintiff from performing any type of dental treatment and did not restrict plaintiff from using

any particular piece of dental equipment.

When Dr. Chavez recommended surgery, plaintiff sought a second opinion from William

Payne ("Dr. Payne").  Like Dr. Chavez, Dr. Payne restricted plaintiff from working more than 20

hours per week but concluded she could continue working as a dentist.  Plaintiff did so.

Even after plaintiff stopped working for Dental Dreams in March 2016, she continued to

own and perform dental procedures at My Dentist.  For example, between June 2, 2014 and

February 29, 2016, plaintiff performed 4,267 procedures, including 978 fillings, 65 root canals,

and 162 extractions, at My Dentist.  Between March 2, 2016 and November 29, 2017, plaintiff

performed 5,167 procedures, including 1301 fillings, 66 root canals and 238 extractions, at My

Dentist.  Thus, she performed more procedures, fillings, root canals and extractions at My

Dentist in the 20 months after her claimed disability commenced than she performed at My

Dentist in the 20 months before.  Defendant denied plaintiff's 2016 claim for benefits.

Plaintiff's claim for benefits in 2016 was not her only claim under the Policy.[3]  Plaintiff

also submitted a claim in 2009.  In her 2009 claim, plaintiff stated, "Before my disability, I

worked full-time, and I performed all aspects of dentistry, including extractions, root canals and

fillings, without any restrictions.  Since my disability, I've had to reduce my work status to part-

time.  I have not been able to do simple or surgical extractions, and I have had to reduce the

number of root canals and fillings I do each day."  Plaintiff testified that, in 2009, her ability to

---

[3] The Court overrules defendant's relevance objection to plaintiff's evidence of her 2009 benefit
claim and defendant's decision thereon.

perform extractions was "quite a bit" reduced. In 2009, plaintiff was able to pull only very loose teeth, i.e., teeth that had "a plus-three mobility" that one "could almost blow . . . out of the socket with air." Plaintiff stated in her 2009 claim that she had been working 30-35 hours per week at My Dentist and that, after the onset of disability, her work was reduced to 21.5 hours per week.

Defendant approved plaintiff's 2009 claim for disability benefits under the Policy. Plaintiff submitted a progress report in September 2009, in which she stated, "I continue to work part-time without doing extractions, limiting the number of root canals treated per day, as well as the number of fillings I do on each patient." Ultimately, defendant paid plaintiff's 2009 disability claim for two years and granted her waiver-of-premium benefits.

## II. STANDARD ON A MOTION FOR SUMMARY JUDGMENT

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). When considering a motion for summary judgment, the Court must construe the evidence and make all reasonable inferences in favor of the non-moving party. *Hutchison v. Fitzgerald Equip. Co., Inc.*, 910 F.3d 1016, 1021 (7th Cir. 2018). Summary judgment is appropriate when the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial." *Celotex v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Brummett v. Sinclair Broadcast Group, Inc.*, 414 F.3d 686, 692 (7th Cir. 2005).

## III.    DISCUSSION

A federal court considering a claim under Illinois law attempts "to predict how the Illinois Supreme Court would decide the issues presented here." *Dunn v. Menard, Inc.*, 880 F.3d 899, 905 (7th Cir. 2018).  Under Illinois law, "[t]he construction of an insurance policy is a question of law." *Netherlands Ins. Co. v. Phusion Projects, Inc.*, 737 F.3d 1174, 1177 (7th Cir. 2013); *see also Allen v. Transamerica Ins. Co.*, 128 F.3d 462, 466 (7th Cir. 1997) ("Under Illinois law, the interpretation of an insurance policy is a question of law.").  The Court's "primary function is to ascertain and give effect to the intent of the parties as expressed in the contract." *Netherlands Ins.*, 737 F.3d at 1177.  "When the words of the policy are unambiguous, they are afforded their plain ordinary meaning." *Employers Ins. of Wausau v. James McHugh Const. Co.*, 144 F.3d 1097, 1104 (7th Cir. 1998); *see also Netherlands Ins.*, 737 F.3d at 1177 ("If the language of the insurance policy is unambiguous and does not offend public policy, the provision will be applied as written.").  If a contract term is ambiguous (though not merely if the parties disagree as to its meaning), then the term is construed against the drafter, which is to say against the insurance company.  *Netherlands, Ins.*, 737 F.3d at 1177.

Plaintiff claims defendant breached the insurance Policy when it failed to grant her disability benefits (as well as social benefits and waiver-of-premium benefits) in 2016.  Plaintiff is entitled to those benefits only if she is disabled within the meaning of the Policy.  The Policy defines disability as follows:

> When We use terms like 'disabled', 'totally disabled,' and 'disability,' We mean Total Disability.  Total Disability means that because of Injury or Sickness, You are:
>
> 1.      Under the regular and personal care of a licensed Physician other than yourself;
> 2.      In the first two years of such disability, *unable to perform the material and substantial duties of Your Regular Occupation*; and

3.     After two years of such disability, unable to perform the material and substantial duties of any gainful occupation for which You are reasonably fitted by education, training or experience.

(Policy at 6) (emphasis added).  Plaintiff seeks benefits for only the first two years of disability, so the third part of the definition is not relevant to this case.  It is undisputed that plaintiff was under the care of a physician.

The dispute in this case is whether plaintiff was "unable to perform the material and substantial duties of [her] Regular Occupation."  To begin with, the parties disagree on what plaintiff's Regular Occupation was.  The Seventh Circuit, for its part, has said "the appropriate focus is on the occupation in which [plaintiff] was engaged at the time of [her] sickness," i.e., at the time she became disabled.  *Winter v. Minnesota Mutual Life Ins. Co.*, 199 F.3d 399, 410 (7th Cir. 1999).  Plaintiff argues her regular occupation is dentist, while defendant argues her regular occupation is dentist and owner at My Dentist.

The Policy defines Regular Occupation as "[t]he job or occupation in which You work on a full time basis, or one from which You derive the majority of Your earned income at the time You are disabled."  Defendant's argument—that plaintiff's regular occupation was dentist and owner at My Dentist—is certainly consistent with the plain language of the second half of the definition.  At the time plaintiff claims to have become disabled, March 2016, she had two jobs: her 20-hour-per-week job as owner and dentist at My Dentist and her 16-hour-per-week job as a dentist at Dental Dreams.[4]  At the time, plaintiff was earning roughly $11,000.00 per month at My Dentist and roughly half that ($2,200.00 biweekly) at Dental Dreams.  Accordingly, the

_____

[4] To the extent plaintiff believes her work at Family Christian is relevant to her claim for disability, the Court disagrees.  Plaintiff voluntarily gave up that position in November 2015 and, the next month, replaced it with her position at Dental Dreams.  Plaintiff's relevant work at the time she claims be have become disabled, i.e., March 2016, is her work at Dental Dreams and her work at My Dentist.

8

position from which plaintiff earned the majority of her income at the time she became disabled was her position at My Dentist. Thus, defendant's argument that plaintiff's Regular Occupation was as dentist and owner of My Dentist is consistent with the second half of the Policy's definition of Regular Occupation, because it was "the one from which [she] derive[d] the majority of [her] earned income at the time [she was] disabled."

Furthermore, it is clear that plaintiff was not "unable to perform the material and substantial duties" of her position at My Dentist. Even after plaintiff's asserted disability date (March 2016), she continued to own and perform dental procedures at My Dentist. True, plaintiff's doctor limited her to working 20 hours per week, but that is exactly how many hours plaintiff had been working at My Dentist before her claimed disability and how many hours she continued to work at My Dentist after the onset of her claimed disability. In fact, it is undisputed that plaintiff performed more root canals, fillings and extractions at My Dentist during the 20 months after March 2016 than she had performed at My Dentist during the 20 months before March 2016. No reasonable jury could conclude that plaintiff was unable to perform the material and substantial duties of owner and dentist at My Dentist during the time plaintiff claims to have been disabled. Thus, if the Court concludes that defendant is correct that plaintiff's Regular Occupation was owner and dentist at My Dentist, then defendant is entitled to judgment as a matter of law on plaintiff's claim.

It is not, however, so clear that defendant's interpretation of Regular Occupation is correct. The definition of Regular Occupation contains two options separated by the word "or." (Policy at 6) ("The job or occupation in which You work on a full time basis, or one from which You derive the majority of Your earned income at the time You are disabled."). The parties offer no suggestions as to how the Court should choose between them. Does the definition mean

that the Regular Occupation is the full-time job or occupation, unless the policy-holder works only part-time, in which case the regular occupation is any job or occupation from which the policy-holder earns the most money? Or does the definition mean a single full-time job unless the plaintiff has multiple jobs, in which case it is the one of several jobs that is the most lucrative? Ultimately, the Court need not decide, because, even under plaintiff's preferred interpretation of Regular Occupation, she still cannot prevail on her claim.

Plaintiff's interpretation of Regular Occupation as meaning, in her case, dentist is a reasonable reading of the first half of the definition of Regular Occupation. That is so, because her two jobs—20 hours per week as owner and dentist at My Dentist and 16 hours per week as dentist at Dental Dreams—could be thought to constitute, together, a full-time occupation as dentist. But, in order to prevail on her claim for breach of contract, plaintiff must still show she was "unable to perform the material and substantial duties" of being a dentist.

The Seventh Circuit has concluded that the phrase "unable to perform the material and substantial duties" is not ambiguous and means "the policy protects the insured from disabilities that prevent his continuing in his regular occupation." *McFarland v. General Amer. Life Ins. Co.*, 149 F.3d 583, 587 (7th Cir. 1998). Plaintiff argues that she was "unable to perform the material and substantial duties" of being a dentist, because it is undisputed that she was restricted to working only 20 hours per week. The problem with plaintiff's argument is twofold. First, the Policy she purchased was not a *partial* disability policy but a *total* disability policy. (Policy at 6) ("When We use terms like 'disabled', 'totally disabled,' and 'disability,' We mean Total Disability.").

Second, the Policy defines Total Disability as being "unable to perform the material and substantial duties" of the position, and the obvious material and substantial duties of being a

dentist are performing dental procedures. *See, e.g., Shapiro v. Berkshire Life Ins. Co.*, 212 F.3d 121, 123 & 126 (2nd Cir. 2000) (dentist "unable to perform 'chair dentistry,' which is the sum of procedures involved in treating dental patients in the dentist's chair" could not perform "the material and substantial duties" of that occupation and was entitled to disability benefits). That is consistent with how plaintiff described her job. [Docket 59-2 at 28, 32] ("I diagnose and treat diseases and injuries of the mouth. I remove dental decay, diseased teeth and neoplasms. I restore teeth with crowns, fillings and onlays. I replace teeth with implants, partial dentures, bridges and complete dentures. I manipulate teeth and braces. I remove diseased tissue during periodontal surgery. I educate patients on proper oral hygiene and dieting. I consult with other dentists, physicians and pharmacists.").

It is undisputed that during her period of claimed disability, plaintiff was *able*, not unable, to perform dental procedures, i.e., the material and substantial duties of the position. It is undisputed that plaintiff could (and did) perform root canals, fillings and extractions even after her disability onset. In fact, it is undisputed that plaintiff performed more dental procedures (including more root canals, more extractions and more fillings) at My Dentist *after* the onset of her claimed disability than she had performed at My Dentist *before* the onset of her disability. The fact that plaintiff could continue performing all of the same dental procedures after the onset of disability is what distinguishes this case from plaintiff's 2009 claim, when defendant paid plaintiff disability benefits for a time when plaintiff was unable to perform a particular dental procedure, namely extractions. Specifically, in 2009, plaintiff could not perform simple or surgical extractions. The only extractions plaintiff could perform in 2009 were extractions of the loosest teeth, the kind plaintiff described as able to be blown out of the socket with air. Thus, plaintiff was disabled, because she was unable to perform extractions, which were a material and

substantial duty of being a dentist. *See McFarland*, 149 F.3d at 588 (explaining that an inability to perform a core function of a job, for example a shortstop unable to throw, could constitute total disability). In 2009, plaintiff was like a shortstop unable to throw; but, in 2012, she was like a shortstop who could play ball, just not in every game.

In *McFarland*, the Seventh Circuit also explained that a person might be considered unable to perform the material and substantial duties of her occupation if a disability "renders the person unable to perform . . . for a long enough period *to continue working at his regular occupation*." *McFarland*, 149 F.3d at 588 (emphasis added). Plaintiff, though, who names her regular occupation as dentist, was, in fact, able to perform for long enough periods to continue working as a dentist. Specifically, plaintiff continued to work as a dentist, performing dental procedures—including root canals, fillings and extractions—at My Dentist after the onset of disability. That she performed less of her occupation, because she was working only 20 hours per week, is not dispositive.[5] Because she continued to perform dental tasks in sufficient

---

[5] Plaintiff insists that her Regular Occupation is dentist, but she argues she is totally disabled by virtue of dropping one of her two positions as dentist. In other words, she wants each position to be a separate occupation. She cannot have it both ways. For plaintiff to argue she is disabled by virtue of her no longer working the extra sixteen hours at Dental Dreams is like dividing her occupation into two (Dental Dreams and My Dentist) and saying she could not do one of the two. The Seventh Circuit rejected a similar idea the second time it considered the *McFarland* case. There, the Seventh Circuit explained:

> [T]he problem with the district court's opinion is that it makes duties synonymous with occupations, therefore rendering the concept of 'total disability' meaningless. Under its reasoning, the district court easily could have concluded that Mr. McFarland had more than two 'occupations;' the district court could have found that Mr. McFarland had the occupation of president, sheet metal worker, human resources manager, crew foreperson and so forth. Following the district court's logic, if Mr. McFarland were to endure an injury or illness that prevented him from performing any one of these 'occupations,' then he would be 'totally disabled' under the policy.

quantities to continue working at her Regular Occupation (dentist, under plaintiff's preferred reading of Regular Occupation), she was not disabled within the meaning of the contract.

Defendant is entitled to judgment as a matter of law on plaintiff's claim for breach of contract. Accordingly, plaintiff's motion for summary judgment is denied, and defendant's motion for summary judgment is granted.

## IV.    CONCLUSION

For all of these reasons, the Court grants defendant's motion [56] for summary judgment and denies plaintiff's motion [61] for summary judgment. Civil case terminated.

SO ORDERED.                                              ENTERED:  March 13, 2020

_____
HON. JORGE ALONSO
United States District Judge

---

*McFarland v. General Amer. Life Ins. Co.*, 210 F.3d 375 (table), 2000 WL 125746 at *3 (7th Cir. 2000). Plaintiff had one occupation, and she was able to continue performing it after the onset of her disability in 2016.